**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No:

JESSICA WEBER

      Plaintiff,

v.

BOARD OF TRUSTEES OF THE UNIVERSITY OF NORTHERN COLORADO
UNIVERSITY OF NORTHERN COLORADO

      Defendant.

_____

**COMPLAINT AND JURY DEMAND**
_____

      Plaintiff Jessica Weber by and through counsel Christopher M.A. Lujan of EMPOWER P.C., respectfully alleges this Complaint and Jury Demand against the University of Northern Colorado referred to herein as "Defendant" or "UNC" or "University."

## I.    <u>INTRODUCTION</u>

    1.    The University of Northern Colorado's Business School has a recent history of engaging in disparate employment practices that it subjects its' female accounting professors to versus the preferential treatment it shows towards its' male accounting professors. This is seen in how the Defendant hires its' accounting professors; how it manages its' accounting professors; and how it awards its' accounting professors

promotion and tenure.  If the accounting professor is male, the process for approving promotions, pay raises, and tenure will proceed smoothly with no delay.  Conversely, if the accounting professor is a female, then procedural roadblocks will arise and the university's appeal processes will need to be utilized for a female professor to get the promotion, pay, and tenure she deserves.  Unfortunately for the female professor, she will not be reimbursed for the back pay deserved due to the Defendant's inexplicable delay in doing the right thing.

2.     The scenario detailed above is the exact situation that the Defendant subjected the Plaintiff (hereafter "Plaintiff" or "Dr. Weber") to in her attempts to promote and earn tenure in 2021.  Despite her considerable achievements over a three-year period and qualifications for promotion and tenure, the Defendant decided that it was appropriate to expose Dr. Weber to discriminatory practices in treating her differently than her male colleagues. The evidence in this case will show that Dr. Weber met the qualifications for promotion and tenure from the day she first applied on 04 January 2021 and there was no legitimate reason for the Defendant's denial.

3.     Dr. Weber was hired on 20 February 2017 by Defendant University of Northern Colorado. Plaintiff was an employee of the University, and the University is an employer, as defined in Title VII of the Civil Rights Act of 1964.

4.     Dr. Weber was subject to worse terms and conditions of employment than her male counterpart, working in the same position.

5.     When Dr. Weber was up for tenure and promotion, Defendant UNC subjected her to a more onerous review process, changed the process as she went along,

revoked a positive recommendation, and subject her to an appeals process, none of which her similarly situated male colleague was subjected to.

6.     Defendant paid Dr. Weber less than her similarly situated male colleague for the same work.

## II.     NATURE OF ACTION

7.     This employment action against Defendant seeks to enforce rights and remedies guaranteed by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*.), as amended; the Equal Pay Act of 1963 (EPA) (29 U.S.C. § 206, *et seq*.); the Colorado Anti-Discrimination Act, as amended, Colo. Rev. Stat. § 24-34-402, et seq. ("CADA") and to provide relief to Plaintiff, who has been adversely affected by the Defendant's violation of such employment rights, as detailed below.

## III.     ADMINISTRATIVE PREREQUISITES

8.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Colorado Civil Rights Division (CCRD) and received a Notice of the Right to Sue letter on 16 September 2024. Thus, all administrative prerequisites have been met.

## IV.     PARTIES

9.     Plaintiff Jessica Weber is a current resident of Berthoud, Colorado and was employed by the Defendant.

10.     Defendant the University of Northern Colorado is a public higher education university located in Greeley, Colorado.

## V.     JURISDICTION AND VENUE

11.     Plaintiff incorporates by reference the above paragraphs herein as set forth herein.

12.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 et. seq.; 42 U.S.C. §1981 and 42 U.S.C. § 2000 et. seq.; the Equal Pay Act of 1963 ("EPA") (29 U.S.C. § 206, *et seq*.); and the Colorado Anti-Discrimination Act ("CADA"), as amended, Colo. Rev. Stat. § 24-34-402, et seq.

13.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arose under federal law, specifically under Title VII, as amended, 42 U.S.C. § 2000e *et seq*., and the EPA, 29 U.S.C. § 206(d).  The Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 (a), as such claims raise out of the same case or controversy as Plaintiff's federal law claims.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in the District of Colorado.

15.     At all relevant times, Defendant UNC was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and 29 U.S.C. § 203(d) of the Fair Labor Standards Act, of which the EPA is a part of that statute.

## VI.    FACTUAL ALLEGATIONS

16.     Dr. Weber is female, and she began her employment as an Assistant Professor of Accounting with the University of Northern Colorado on 20 February 2017.

17.     When Dr. Weber was first hired in 2017, there were eight accounting faculty members.

18.    Because of her prior teaching experience at the University of Nevada, Reno, Dr. Weber was awarded one year of credit towards promotion and tenure.

19.    In December 2020, UNC's Dean and Professor of Management at the Monfort College of Business, Dr. Sher R. Gibbs, encouraged Plaintiff to apply for tenure in 2021.  Specifically, she asked in an email,

> *"Are you planning to go up for tenure this year?  If you have the research publications, I think you shouldn't forgo and wait until next year.  Your teaching is great, and you've done an awesome job with service on the SASC.  Think about it."*

20.    Shortly after receiving this encouragement from Dr. Gibbs, the Plaintiff submitted her application for promotion with tenure on 04 January 2021.  The first level of review is supposed to be conducted by tenure and tenure-track faculty members from within the Accounting Department.

21.    Three weeks after she submitted her application, Plaintiff was notified by Department Chair Pat Seaton that additional faculty members needed to be located because there was an insufficient number of tenured professors available to conduct this initial review.

22.    In past reviews, the process was supposed to be anonymous to eliminate any bias which could skew this process.

23.    One day later, on 23 January 2021, Associate Dean Michael Martin informed Dr. Weber that other tenured professors had been selected to review Dr. Weber's application.  Mr. Martin notified Plaintiff who these professors where which was surprising to Dr. Weber because she believed this process was supposed to be an

5

anonymous process and these results were supposed to be compiled by the HR Specialist (Anne Huerter at the time) to preserve anonymity.

24.    On 25 January 2021, Dr. Weber received her peer reviews from male professors Philipp Schaberl, Bill Wilcox and either Vish Iyer or Milan Larson.  They did not recommend Dr. Weber for promotion and tenure.

25.    The next day, Associate Dean Martin called Dr. Weber and notified her that a female accounting professor would be reviewing her application and that her review would be added shortly.

26.    On 27 January 2021, Dr. Weber met in person with the Dean Gibbs to discuss her disappointment in how women are treated in the Accounting Department and to explain how she disagreed with the peer evaluations provided by her two male colleagues Bill Wilcox and Philipp Schaberl.  Dr. Weber informed Dean Gibbs that she intended to get a lawyer to represent her against UNC for gender discrimination, but Dean Gibbs asked her to wait and see what happens with the tenure process first as she was adding two reviewers to review her application which could result in a favorable for the Complainant.

27.    On 09 February 2021, Dr. Weber received a notification to respond to the issues and concerns raised by the tenured professors in her review.  When she attempted to respond, there were only three of the five reviews provided to her to respond to. *Further, the group now concluded that they recommend Dr. Weber for promotion and tenure.*  This data was compiled by HR Specialist Anne Huerter and her last day as a UNC employee was on 10 February 2021.

28.    The next day, Dr. Weber attempted to respond to the professors' reviews and noticed that the task had been removed and that the process was again sent back to the professors for another review.  When Dr. Weber emailed Associate Dean Martin to ask why the step disappeared, he notified Dr. Weber that it was because he had to go back in to upload all five reviews and that he was going to require an official "vote" by the five professors.

29.    Dr. Weber expressed her disappointment in this decision that he recalled the HR Specialist's anonymous compilation and recommendation (after she was no longer employed at UNC) and that he invented a new step designed to remove anonymity; he informed the Associate Dean of each person's vote, and changed the favorable recommendation the professors reached just the day before.

30.    On 11 February 2021, Associate Dean Martin emailed Dr. Weber's peers asking them to vote Yes/No on the issue of promotion and tenure.  Dr. Weber was informed by another tenured female accounting professor that this process was initially only directed at Dr. Weber and not at a male professor who was recently promoted, Professor Philipp Schaberl.  This female professor did not agree with using a different process for Dr. Weber as compared to Professor Schaberl.

31.    On 16 February 2021, Associate Dean Martin compiled the vote (3-2 against) and changed the conclusion to "No, we do not recommend Promotion & Tenure."

32.    Six days later, Dr. Weber on 22 February 2021 appealed this denial to the Tenure Appeals Committee.

33.    In her appeal, Dr. Weber responds to the concerns involving her teaching, scholarship, and service. To supplement her accomplishments over a four-year period, Dr. Weber notes that she taught twenty-one accounting courses over a five-year period; published five scholarly articles with another article pending approval; and she was an active faculty member on the Accounting Department Search Committee and the Student Affairs and Scholarship Committee.

34.    Two weeks later, seven members of the Tenure Appeal Committee met on 11 March 2021 to decide on the merits of Dr. Weber's appeal.  After reviewing Dr. Weber's materials in support of her appeal, the committee voted in support of Dr. Weber's appeal to reverse the denial of her appeal from Accounting Associate Dean Martin.

35.    In its' decision, the Tenure Appeal Committee noted that there were procedural issues, namely the "inconsistent criteria used in the promotion and tenure evaluation process [where] [e]ven the faculty in the Accounting Department seemed unsure as to which criteria to use."

36.    Further, the Tenure Appeal Committee noted the "lack of appropriate mentorship" and the "mixed messages with respect to Dr. Weber's performance from the Dean and other faculty members."  The committee further noted that the negative teacher ratings "during a worldwide pandemic" were "surprising" considering the "positive teaching evaluations" received in prior years.  Finally, the committee noted that "the issues listed…are more linked to personality issues and not with her ability to provide instruction at UNC.  Dr. Weber's teaching evaluations and feedback are positive."

37.     One month later on 11 April 2021, Dean Gibbs gave her support to Complainant's promotion and tenure application.   Dean Gibbs opined, "[g]iven her accomplishments, I am happy to recommend Dr. Weber for tenure and promotion to associate professor."

38.     With regards to her ability to teach, Dean Gibbs gave Dr. Weber an "excellent" rating where her teaching evaluations "were well above departmental and MCB averages."   In rating her scholarship, Dean Gibbs gave Dr. Weber an "exceeds expectations" because she "published five peer-reviewed journal articles."  In Dean Gibbs' assessment of the accounting department's reviewing criteria, Dr. Gibbs noted, "I do not believe that this informal expectation was communicated properly to all faculty."

39.     In the service category, Dr. Gibbs noted that Dr. Weber "met expectations" of "what should be expected of a junior faculty."   Again, Dr. Gibbs noted that the accounting departments "disconnect" regarding expectations in this category is "due to a lack of proper mentoring and frank feedback in prior annual evaluations."

40.     That same month, Dr. Weber received two letters from Provost and Senior Vice President for Academic Affairs Mark R. Anderson where he notified Dr. Weber that she would be recommended for approval for promotion and tenure to UNC's Board of Trustees.

41.     In his 09 April 2021 letter to Dr. Weber, Mr. Anderson gave Dr. Weber a "Level IV" ratings for teaching, professional activity, and service.  Dr. Weber was notified that she would receive a decision from the Board of Trustees no later than 15 July 2021.

42.    Three weeks later, Mr. Anderson sent another letter to Dr. Weber again notifying her that she would be recommended for approval for promotion and tenure to UNC's Board of Trustees. In this letter, Mr. Anderson gave Dr. Weber a Level IV rating in the teaching category and Level III ratings in professional activity and service categories. Dr. Weber was again notified that she would receive a decision from the Board of Trustees no later than 15 July 2021.

43.    There were no substantive reasons given for Mr. Anderson's revised letter or why he gave Dr. Weber lower ratings in the professional activity and service categories. A side-by-side comparison of the two letters shows little material differences between these two letters and lends further evidence to the notion that the Defendant's handling of Dr. Weber's application for promotion and tenure was shoddy, confusing, and maddingly incompetent.

44.    The Board of Trustees finally approved Dr. Weber's promotion and tenure on 11 June 2021.

45.    Since hiring her in 2017, the Defendant has subjected Dr. Weber to disparate treatment in comparison to her comparator and colleague, Accounting Professor Phillip Schaberl.

46.    When she was hired, Dr. Weber asked Department Chair Pat Seaton if she could get a "course release" during her first year to teach one less course while she became acclimated to teaching at UNC. In response to Dr. Weber's request, Mr. Seaton responded by asserting that there was insufficient faculty coverage to grant her request.

47.     At that time, there were eight accounting faculty members to teach accounting classes at UNC.

48.     Once year later in 2018, the Defendant hired Accounting Professor Schaberl. At the time of hire, UNC—through Department Chair Seaton—granted Professor Schaberl a course release although the number of faculty had not changed from 2017 to 2018.

49.     Although there were still only eight accounting faculty members to teach accounting courses at UNC, the Defendant allowed Professor Schaberl a course release that it was not willing to grant Dr. Weber.

50.     Dr. Weber first became aware of this disparate treatment in February 2021 while she was preparing her materials to submit to the Tenure Appeals Committee.

51.     A reviewer on this Committee noted that she had "only" taught two separate classes, so she was reviewing past schedules to see how that compared to Professor Schaberl's case load, which is when she first noticed he was awarded to the course release his first year.

52.     Previously, a peer group prepared evaluations which were submitted to the HR specialist, who compiled the reviews anonymously, merged to create one aggregate score, and made a recommendation based on this aggregate score.

53.     This was a process that UNC used to approve Professor Schaberl's application for promotion and tenure. Such a simple process was not afforded to Dr. Weber.

54.    Instead, the Defendant used multiple rounds of voting in considering Dr. Weber's application for promotion and tenure.

55.    After the first round of voting on 09 February 2021, tenured professors approved Dr. Weber's application.

56.    The next day, Dr. Weber was notified that a new round of voting was scheduled to take place and one week later, Dr. Weber is notified that her application had been denied.

57.    Dr. Weber was notified by a tenured female accounting professor that multiple rounds of voting were not used in considering Professor Schaberl's application.

58.    The Defendant's sudden and unexplained change in its' process and procedures unduly delayed Dr. Weber's promotion and tenure that she earned.

59.    The Defendant's pay records illustrate that it paid Professor Schaberl more than Dr. Weber for performing similar work.  Prior to the Defendant's pay adjustment to Dr. Weber's salary in April 2021, UNC paid Professor Schaberl $140,000 per year while it paid Dr. Weber $135,000.

60.    The Defendant paid Professor Schaberl more even though he had one year less service at the university than Dr. Weber.

61.    The Defendant did not provide Dr. Weber with backpay to compensate her for the time she was paid less than Professor Schaberl for performing the same work.

62.    Dr. Weber received counseling from a mental health professional for treatment from the emotional distress caused by the Defendant's treatment in how it handled her candidacy for promotion and tenure.

63. Because of the treatment she received from the Defendant, Dr. Weber was forced to take disability leave to seek counseling from her mental health provider and primary care provider in 2023.

64. While on leave in 2023, Dr. Weber would continue to receive information from other female accounting professors that the disparate treatment of female faculty at the university's College of Business was continuing.

65. When Dr. Weber was unable to obtain medical clearance from her medical team because of the treatment she received from Defendant, she was forced to resign from her position on 31 December 2023.

66. The Defendant's ongoing disparate treatment towards other female faculty members coupled with her inability to obtain medical clearance to return to work made Dr. Weber's resignation necessary.

67. Dr. Weber has not been able to find comparable work as an accounting professor in the state of Colorado. Finding comparable work elsewhere would force Dr. Weber to sell her home and move elsewhere.

## VII.    STATE OF CLAIMS FOR RELIEF
### <u>FIRST CLAIM FOR RELIEF</u>
**(Sex Discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)**

68. Plaintiff incorporates by reference the above paragraphs herein as set forth herein.

69. The Defendant subjected Dr. Weber to less favorable terms and conditions of her employment based on her sex as described in the Complaint, including but not limited to: paying Plaintiff less than her male peer for the same work; granting a "course

release" to Plaintiff's male peer after denying Plaintiff's request for one; subjecting Plaintiff to a more onerous promotion process than her male peer; subjecting Plaintiff to new and different requirements for promotion than her male peer; and taking longer to promote Plaintiff than her male peer.

70.     The Defendant's proffered reasons for refusing to promote Plaintiff were mere pretext for discrimination.

71.     The Defendant treated Plaintiff less favorably than her similarly situated co-workers.

72.     UNC's conduct discriminated against Plaintiff based on her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

73.     The Plaintiff suffered from emotional distress damages because of the Defendant's conduct as may be proven at trial.

74.     The acts or omissions by the Defendant were the legal and proximate cause of Plaintiff's damages as may be proven at trial.

75.     Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

## SECOND CLAIM FOR RELIEF
### (Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

76.     Plaintiff incorporates by reference, as though fully set forth herein.

77.     Plaintiff participated in statutorily protected activity by opposing practices to Dean Gibbs on 27 January 2021 because these practices targeted at her were unlawful under Title VII, including discrimination based on sex.

78.    As a result of Plaintiff's protected opposition to discrimination, UNC retaliated against her by subjecting her to different terms and conditions of employment as described in this Complaint, including but not limited to: subjecting Plaintiff to a more onerous review process; altering the typical procedure for promotion; revoking a positive recommendation and replacing it with a "do not recommend" conclusion; and requiring Plaintiff appeal despite the former positive recommendation.

79.    The Defendant made the decision to engage in these adverse employment actions shortly after Dr. Weber's complained about the disparate treatment, she was receiving in her attempts to promote and earn tenure.

80.    Dr. Weber was first denied promotion and tenure on 16 February 2021.

81.    But for Dr. Weber's decision to engage in her protected activity about the discriminatory conduct she was experiencing, she would not have suffered from the adverse employment actions listed above.

82.    The Defendant's retaliatory employment practices reflect its reckless and wanton indifference or hostility to Dr. Weber's protected employment rights which directly and proximately resulted in such damages as may be proven at trial.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**(Sex-Based Wage Discrimination in violation of the Equal Pay Act of 1963,**
**as amended)**

</div>

83.    Plaintiff hereby incorporates all paragraphs of this Complaint as fully set forth herein.

84.    During her employment with UNC as an accounting professor, Dr. Weber was performing work that was substantially equal to one or more similarly employed male

accounting professors considering the skills, duties, supervision, effort, and responsibilities of that role.

85.    The conditions and job duties where the work was performed by Plaintiff and one or more male accounting professors was basically the same.

86.    Dr. Weber and other similarly situated male accounting professors are tasked with teaching students, engaging in scholarship in terms of publishing articles; and engaging in service.

87.    There is no substantive difference between the two professors, yet Dr. Weber was paid less than Professor Schaberl.

88.    One or more male accounting professors was paid more than Dr. Weber under such circumstances.

89.    UNC either willfully knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

90.    The Defendant cannot point to one permissible reason under the Equal Pay Act to justify paying a male accounting professor more than a female accounting professor.

91.    The Defendant cannot cite to a seniority or merit system as the reason for disparate pay.

92.    The Defendant has not made restitution to Dr. Weber for the entire period for which she was paid less than a male comparator.

93.    As a direct and proximate result of UNC's actions, Plaintiff has suffered damages, including lost wages and benefits.

94.    The Plaintiff seeks liquidated damages against the Defendant for all wages which were willfully or recklessly withheld from Dr. Weber.

95.    The acts or omissions by the Defendant were the legal and proximate cause of Plaintiff's injuries, damages, and losses as may be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Retaliation in violation of the Equal Pay Act of 1963, as amended)

96.    Plaintiff incorporates by reference, as though fully set forth herein.

97.    Plaintiff participated in statutorily protected activity by opposing practices to Dean Gibbs on 27 January 2021 because these practices targeted at her were unlawful under the Equal Pay Act including paying her less than a male accounting professor who performed the same duties as Dr. Weber.

98.    As a result of Plaintiff's protected opposition to disparate pay practices, UNC retaliated against her by continuing to subject her to lower pay than a similarly situated male accounting professor.

99.    The Defendant made the decision to engage in these adverse employment actions shortly after Dr. Weber's complained about the disparate treatment, she was receiving in her attempts to promote and earn tenure.

100.    Dr. Weber was first denied promotion and tenure on 16 February 2021 which resulted in her receiving lower pay than a similarly situated male professor.

101.    But for Dr. Weber's decision to engage in her protected activity about the discriminatory conduct she was experiencing, she would not have suffered from the adverse employment actions listed above.

102.    The Defendant's retaliatory employment practices reflect its reckless and wanton indifference or hostility to Dr. Weber's protected employment rights which directly and proximately resulted in such damages as may be proven at trial.

<div style="text-align:center">

**FIFTH CLAIM FOR RELIEF**
**(Sex-Based Wage Discrimination in violation of the Colorado Anti-Discrimination Act C.R.S. §24-34-402, *et. seq.*)**

</div>

103.    Plaintiff hereby incorporates all paragraphs of this Complaint as fully set forth herein.

104.    Defendant is an employer who is properly subject to the provisions contained in the Colorado Anti-Discrimination Act.

105.    Defendant subjected Dr. Weber to discriminatory or unfair employment practices based on her race, in violation of the Colorado Anti-Discrimination Act.

106.    Dr. Weber, as a female, is a member of a class of citizens that is protected by the Colorado Anti-Discrimination Act.

107.    The Defendant subjected Dr. Weber to less favorable terms and conditions of her employment based on her sex as described in the Complaint, including but not limited to: paying Plaintiff less than her male peer for the same work; granting a "course release" to Plaintiff's male peer after denying Plaintiff's request for one; subjecting Plaintiff to a more onerous promotion process than her male peer; subjecting Plaintiff to new and different requirements for promotion than her male peer; and taking longer to promote Plaintiff than her male peer.

108.    The Defendant's proffered reasons for refusing to promote Dr. Weber were a mere pretext for discrimination.

109.    The Defendant treated Plaintiff less favorably than her similarly situated co-workers.

110.    UNC's conduct discriminated against Plaintiff based on her sex in violation of C.R.S. §24-34-401, et seq.

111.    As a proximate result of Defendant's equal protection violations, Plaintiff suffered and continues to suffer injuries, damages and losses.

112.    The Plaintiff suffered emotional distress damages because of the Defendant's conduct as may be proven at trial.

113.    The acts or omissions by the Defendant were the legal and proximate cause of Plaintiff's injuries, damages, and losses as may be proven at trial.

### SIXTH CLAIM FOR RELIEF
**(Retaliation in violation of the Colorado Anti-Discrimination Act C.R.S. §24-34-402, *et. seq.*)**

114.    Plaintiff incorporates by reference, as though fully set forth herein.

115.    Defendant is an employer who is properly subject to the provisions contained in the Colorado Anti-Discrimination Act.

116.    Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under the Colorado Anti-Discrimination Act, including discrimination based on sex and disparate pay practices.

117.    As a result of Plaintiff's protected opposition to discrimination, UNC retaliated against her by subjecting her to different terms and conditions of employment as described in this Complaint, including but not limited to: subjecting Dr. Weber to a more onerous review process; altering the typical procedure for promotion; revoking a

positive recommendation and replacing it with a "do not recommend" conclusion; and requiring Plaintiff appeal despite the former positive recommendation.

118.    The Defendant made the decision to engage in these adverse employment actions shortly after Dr. Weber's complained about the disparate treatment, she was receiving in her attempts to promote and earn tenure.

119.    But for Dr. Weber's decision to engage in her protected activity about the discriminatory conduct she was experiencing, she would not have suffered from the adverse employment actions listed above.

120.    The Defendant's retaliatory employment practices reflect its reckless and wanton indifference or hostility to Dr. Weber's protected employment rights which directly and proximately resulted in such damages as may be proven at trial.

### VIII.  **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor against Defendant and order the following relief as allowed by law:

A.    Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

B.    Back pay and benefits;

C.    Front pay and benefits;

D.    Injunctive relief from the Court to immediately cease using different criteria and processes for considering promotion and tenure for female professors than the criteria and processes it uses for male professors;

E.    A declaratory judgment from the Court declaring that the criteria and

processes it used in considering Dr. Weber's candidacy for promotion and tenure violated federal and state discrimination laws;

F.    Liquidated damages;

G.    Attorneys' fees and costs of this action as permitted by law;

H.    Pre-judgment and post-judgment interest; and

I.    Such further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 27th day of November 2024.

<div style="margin-left:auto">

_s/ Christopher M.A. Lujan_
Christopher M.A. Lujan, Esq.
Empower P.C
2851 South Parker Road, Suite 316
Aurora, Colorado 80014
720.791.5700 (Office)
720.260.1802 (Mobile)
303.317.8145 (Facsimile)
christopher@empowerlawdenver.com
Attorney for Plaintiff Dr. Jessica Weber

</div>

cc: Dr. Jessica Weber